1

08:38AM   1                   IN THE UNITED STATES DISTRICT COURT

          2                      FOR THE DISTRICT OF HAWAII

          3
              UNITED STATES OF AMERICA,      )   CRIMINAL NO. 19-00099-DKW
          4                                  )
                           Plaintiff,        )   Honolulu, Hawaii
          5                                  )
                      vs.                    )   March 17, 2022
          6                                  )
              MICHAEL J. BUNTENBAH,   (07)   )   CHANGE OF PLEA
          7   aka "Mike B,"                  )
                                             )
          8                Defendant.        )
              _____)
          9

         10                   TRANSCRIPT OF PROCEEDINGS
                      BEFORE THE HONORABLE DERRICK K. WATSON,
         11              UNITED STATES DISTRICT COURT JUDGE

         12   APPEARANCES:

         13

         14   For the Plaintiff:        MARK INCIONG, ESQ.
                                        Office of the United States Attorney
         15                             PJKK Federal Building
                                        300 Ala Moana Boulevard, Suite 6100
         16                             Honolulu, Hawaii  96850

         17   For the Defendant:        GARY K. SPRINGSTEAD, ESQ.
                                        Springstead Bartish Borgula &
         18                             Lynch, PLLC
                                        28A W. Main Street
         19                             Fremont, MI 49412

         20

         21   Official Court Reporter:  Gloria T. Bediamol, RPR RMR CRR FCRR
                                        United States District Court
         22                             300 Ala Moana Boulevard
                                        Honolulu, Hawaii 96850
         23

         24
                 Proceedings recorded by machine shorthand, transcript produced
         25   with computer-aided transcription (CAT).

```
 1   March 17, 2022                              9:07 a.m.
```

09:07AM   2        THE CLERK:  Criminal Number 19-00099 DKW-KJM, United

09:07AM   3   States of America versus Defendant (07) Michael Buntenbah.

09:07AM   4        Also known as Mike B.  This case has been called for a

09:07AM   5   change of plea hearing.

09:07AM   6        Counsel, please make your appearances for the record.

09:08AM   7        MR. INCIONG:  Good morning, Your Honor.  Mark Inciong

09:08AM   8   for the United States.

09:08AM   9        THE COURT:  Mr. Inciong, good morning.

09:08AM   10        MR. SPRINGSTEAD:  Good morning, Your Honor.  Gary

09:08AM   11   Springstead on behalf of Mr. Buntenbah.

09:08AM   12        THE COURT:  Mr. Springstead and Mr. Buntenbah good

09:08AM   13   morning to both of you.  You may be seated.  We are here today

09:08AM   14   because Mr. Buntenbah wishes to plead guilty to Count 10 of the

09:08AM   15   July 2021 second superseding indictment pursuant to a plea

09:08AM   16   agreement with the United States.

09:08AM   17        Mr. Buntenbah, before accepting your plea there are a

09:08AM   18   few questions that I need to ask you this morning; those

09:08AM   19   questions are designed to ensure that your decisions are both

09:08AM   20   knowing and voluntary.  If at any time during the course of

09:08AM   21   this morning's proceedings I ask you any question at all that

09:08AM   22   is confusing, ambiguous, or unclear to you in some fashion --

09:08AM   23   it's not my intent to do any of those things, but if I do,

09:08AM   24   please point that out to me and I'll do my very best to ask a

09:08AM   25   better question or if necessary to give you time to speak with

| | | |
|---|---|---|
| 09:08AM | 1 | Mr. Springstead to get clarification from him.  Okay? |
| 09:09AM | 2 | THE DEFENDANT:  I understand.  Yes, Your Honor. |
| 09:09AM | 3 | THE COURT:  Please swear the defendant. |
| 09:09AM | 4 | THE CLERK:  Mr. Buntenbah, please raise your right |
| 09:09AM | 5 | hand. |
| 09:09AM | 6 | (The defendant was sworn to answer truthfully.) |
| 09:09AM | 7 | THE COURT:  Please understand, sir, that you have now |
| 09:09AM | 8 | taken an oath to answer my questions this morning truthfully. |
| 09:09AM | 9 | And, if you do anything other than that, you could be |
| 09:09AM | 10 | subjecting yourself to additional charges; do you understand |
| 09:09AM | 11 | that? |
| 09:09AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 09:09AM | 13 | THE COURT:  Please state your full name. |
| 09:09AM | 14 | THE DEFENDANT:  Michael Joseph Buntenbah Malone. |
| 09:09AM | 15 | THE COURT:  How old are you, sir? |
| 09:09AM | 16 | THE DEFENDANT:  50 years old. |
| 09:09AM | 17 | THE COURT:  What is the highest level of education |
| 09:09AM | 18 | that you have achieved? |
| 09:09AM | 19 | THE DEFENDANT:  Three years of college. |
| 09:09AM | 20 | THE COURT:  You're a high school graduate then? |
| 09:09AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 09:09AM | 22 | THE COURT:  Did that happen here in Hawaii? |
| 09:09AM | 23 | THE DEFENDANT:  Yes, 1990, Kailua High School. |
| 09:09AM | 24 | THE COURT:  Surfriders, huh? |
| 09:09AM | 25 | THE DEFENDANT:  Yes. |

| | | |
|---|---|---|
| 09:09AM | 1 | THE COURT:  You understand, speak, and I assume you |
| 09:09AM | 2 | write English all just fine; is that fair? |
| 09:09AM | 3 | THE DEFENDANT:  Yes, correct, Your Honor. |
| 09:10AM | 4 | THE COURT:  Have you taken any type of drugs, legal or |
| 09:10AM | 5 | illegal, within the past 48 hours? |
| 09:10AM | 6 | THE DEFENDANT:  No, Your Honor. |
| 09:10AM | 7 | THE COURT:  Have you consumed any alcohol within the |
| 09:10AM | 8 | past 24 hours? |
| 09:10AM | 9 | THE DEFENDANT:  No, Your Honor. |
| 09:10AM | 10 | THE COURT:  Is it fair to say then that you are sober |
| 09:10AM | 11 | and thinking clearly this morning? |
| 09:10AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 09:10AM | 13 | THE COURT:  What is your understanding, sir, of the |
| 09:10AM | 14 | purpose of this morning's hearing? |
| 09:10AM | 15 | THE DEFENDANT:  My attorney and the prosecutor reached |
| 09:10AM | 16 | a plea agreement, and I'm going to be pleading out to Count 10 |
| 09:10AM | 17 | of the superseding indictment. |
| 09:10AM | 18 | THE COURT:  Have you had enough time, sir, to discuss |
| 09:10AM | 19 | that decision on whether or not to plead guilty as well as this |
| 09:10AM | 20 | case generally with your counsel? |
| 09:10AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 09:10AM | 22 | THE COURT:  And, Mr. Springstead, are you, sir, |
| 09:10AM | 23 | satisfied that your client has the capacity and competence to |
| 09:10AM | 24 | enter a knowing and informed plea this morning? |
| 09:10AM | 25 | MR. SPRINGSTEAD:  Yes. |

| | | |
|---|---|---|
| 09:10AM | 1 | THE COURT:  Mr. Buntenbah, are you satisfied with |
| 09:10AM | 2 | Mr. Springstead's representation of you thus far in this case? |
| 09:10AM | 3 | THE DEFENDANT:  Yes, Your Honor. |
| 09:10AM | 4 | THE COURT:  All right.  Now Count 10 of the relevant |
| 09:10AM | 5 | indictment, that's the second superseding indictment, in |
| 09:11AM | 6 | summary charges you with conspiring with others here in Hawaii |
| 09:11AM | 7 | between the 1990s time period and 2018 to commit assault with a |
| 09:11AM | 8 | dangerous weapon and assault resulting in serious bodily |
| 09:11AM | 9 | injury, both crimes that violate various provisions within |
| 09:11AM | 10 | Section 707 of the Hawaii Revised Statutes, all in violation of |
| 09:11AM | 11 | the racketeering laws of the United States, specifically Title |
| 09:11AM | 12 | 18 of the United States Code, Section 1959, subsection A6. |
| 09:11AM | 13 | Have you discussed this particular charge and these |
| 09:11AM | 14 | allegations with counsel? |
| 09:11AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 09:11AM | 16 | THE COURT:  And based on your own review and |
| 09:11AM | 17 | discussions with counsel, are you confident that you understand |
| 09:11AM | 18 | the nature of the charges brought against you? |
| 09:11AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 09:11AM | 20 | THE COURT:  Do you have any questions at all regarding |
| 09:11AM | 21 | these charges? |
| 09:11AM | 22 | THE DEFENDANT:  No. |
| 09:11AM | 23 | THE COURT:  Has anyone, Mr. Buntenbah, threatened, |
| 09:11AM | 24 | forced, or coerced you into pleading guilty this morning? |
| 09:11AM | 25 | THE DEFENDANT:  No, Your Honor. |

| | | |
|---|---|---|
| 09:11AM | 1 | THE COURT:  To your knowledge, has anyone threatened, |
| 09:11AM | 2 | forced, or coerced anyone close to you, meaning a close friend |
| 09:11AM | 3 | or relative, in order to get you to plead guilty? |
| 09:12AM | 4 | THE DEFENDANT:  No, Your Honor. |
| 09:12AM | 5 | THE COURT:  Has anyone made any promises or assurances |
| 09:12AM | 6 | to you in order to get you to plead guilty, other than the |
| 09:12AM | 7 | promises that the government has made in its written plea |
| 09:12AM | 8 | agreement with you? |
| 09:12AM | 9 | THE DEFENDANT:  No, Your Honor. |
| 09:12AM | 10 | THE COURT:  Are you pleading guilty this morning |
| 09:12AM | 11 | because you are guilty of the conduct alleged in Count 10? |
| 09:12AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 09:12AM | 13 | THE COURT:  MR. Inciong, what are the potential |
| 09:12AM | 14 | penalties that Mr. Buntenbah faces for pleading guilty to Count |
| 09:12AM | 15 | 10? |
| 09:12AM | 16 | MR. INCIONG:  Your Honor, those penalties are as |
| 09:12AM | 17 | follows:  There is a term of imprisonment of not more than |
| 09:12AM | 18 | three years; there is a fine of up to $250,000; there is a term |
| 09:12AM | 19 | of supervised release of up to one year; there is also a |
| 09:12AM | 20 | mandatory $100 special assessment; and there is possible |
| 09:12AM | 21 | restitution. |
| 09:12AM | 22 | THE COURT:  All right.  Mr. Springstead, do you agree |
| 09:12AM | 23 | that the government's counsel, Mr. Inciong, has set forth the |
| 09:12AM | 24 | potential penalties, and has done so accurately, that your |
| 09:12AM | 25 | client faces for pleading guilty to Count 10? |

| | | |
|---|---|---|
| 09:12AM | 1 | MR. SPRINGSTEAD:  Yes, Your Honor. |
| 09:13AM | 2 | THE COURT:  Mr. Buntenbah, do you, sir, understand the |
| 09:13AM | 3 | potential penalties that you face for pleading guilty to this |
| 09:13AM | 4 | particular count? |
| 09:13AM | 5 | THE DEFENDANT:  Yes, Your Honor. |
| 09:13AM | 6 | THE COURT:  You've entered into a plea agreement with |
| 09:13AM | 7 | the government? |
| 09:13AM | 8 | THE DEFENDANT:  That's correct, Your Honor. |
| 09:13AM | 9 | THE COURT:  Have you read that plea agreement -- it's |
| 09:13AM | 10 | a written plea agreement, have you read that agreement in full? |
| 09:13AM | 11 | THE DEFENDANT:  Yes, Your Honor. |
| 09:13AM | 12 | THE COURT:  Have you had a chance to discuss it with |
| 09:13AM | 13 | counsel? |
| 09:13AM | 14 | THE DEFENDANT:  Yes, Your Honor. |
| 09:13AM | 15 | THE COURT:  And based on your own review and your |
| 09:13AM | 16 | discussions with counsel, are you confident that you understand |
| 09:13AM | 17 | each of the terms of your plea agreement with the United |
| 09:13AM | 18 | States? |
| 09:13AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 09:13AM | 20 | THE COURT:  Do you have any questions at all regarding |
| 09:13AM | 21 | the plea agreement? |
| 09:13AM | 22 | THE DEFENDANT:  No, Your Honor. |
| 09:13AM | 23 | THE COURT:  Mr. Springstead, are you satisfied that |
| 09:13AM | 24 | your client understands the terms of his plea agreement with |
| 09:13AM | 25 | the United States? |

09:13AM  1           MR. SPRINGSTEAD:  Yes, Your Honor.  We've had a chance

09:13AM  2   to discuss it numerous times and answered any questions that

09:13AM  3   Mr. Buntenbah may have.

09:13AM  4           THE COURT:  And I have what appears to be the original

09:13AM  5   of that agreement in front of me, it is a 22-paged document.

09:13AM  6   On the final page there are a number of signatures, including

09:13AM  7   your electronic signature, Mr. Buntenbah, dated -- well, all of

09:13AM  8   the signatures are dated March 4, 2022.  Do you recall affixing

09:13AM  9   your signature to this particular document?

09:14AM  10          THE DEFENDANT:  Yes, Your Honor.

09:14AM  11          THE COURT:  Does the written plea agreement, sir,

09:14AM  12   reflect the entire agreement you have with the United States?

09:14AM  13          THE DEFENDANT:  Yes, Your Honor.

09:14AM  14          THE COURT:  In other words, did the government make

09:14AM  15   any verbal or oral promises to you that they did not put into

09:14AM  16   the written plea agreement?

09:14AM  17          THE DEFENDANT:  No, Your Honor.

09:14AM  18          THE COURT:  Do you understand, sir, that the Court is

09:14AM  19   not required to accept the plea agreement?  It is possible that

09:14AM  20   I could reject it, but I won't make that determination until

09:14AM  21   after a presentence investigation and related report have been

09:14AM  22   completed that process usually takes somewhere between three

09:14AM  23   and four months; do you understand that?

09:14AM  24          THE DEFENDANT:  Yes, Your Honor.

09:14AM  25          THE COURT:  Do you also understand, sir, that any

| | | |
|---|---|---|
| 09:14AM | 1 | stipulations in the written plea agreement are stipulations or |
| 09:14AM | 2 | agreements between you and the Department of Justice, and the |
| 09:14AM | 3 | Court is specifically not bound by those stipulations? |
| 09:14AM | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 09:14AM | 5 | THE COURT:  With that then I'll turn to the |
| 09:14AM | 6 | government's attorney, AUSA Inciong, to please set forth the |
| 09:14AM | 7 | essential terms of the government's plea agreement with |
| 09:14AM | 8 | Mr. Buntenbah, including any appellate waiver provisions |
| 09:15AM | 9 | please. |
| 09:15AM | 10 | MR. INCIONG:  Yes, Your Honor.  The terms of the plea |
| 09:15AM | 11 | agreement are as follows: |
| 09:15AM | 12 | Mr. Buntenbah, the defendant, will enter a voluntary |
| 09:15AM | 13 | plea of guilty to Count 10 of the second superseding |
| 09:15AM | 14 | indictment, which charges him with conspiracy to commit assault |
| 09:15AM | 15 | in aid of racketeering.  In return, the government has agreed |
| 09:15AM | 16 | to move to dismiss Counts 15 and 16 of the second superseding |
| 09:15AM | 17 | indictment as to Mr. Buntenbah after sentencing. |
| 09:15AM | 18 | The defendant agrees that this memorandum of plea |
| 09:15AM | 19 | agreement shall be filed and become part of the record in this |
| 09:15AM | 20 | case.  And Mr. Buntenbah is entering this plea because he is in |
| 09:15AM | 21 | fact guilty of conspiracy to commit assault in aid of |
| 09:15AM | 22 | racketeering as charged in Count 10 of the second superseding |
| 09:15AM | 23 | indictment. |
| 09:15AM | 24 | Mr. Buntenbah further agrees that his plea is |
| 09:15AM | 25 | voluntary and not the result of any force or threats. |

09:15AM  1        There are a number of factual stipulations which were

09:15AM  2   entered into by the parties which begin at page 4 of the plea

09:15AM  3   agreement and continue until page 10 of the plea agreement.

09:16AM  4        Pursuant to Rule 32.1(a) of the local rules of the

09:16AM  5   District of Hawaii, the parties have agreed that the charge to

09:16AM  6   which Mr. Buntenbah is pleading guilty adequately reflects the

09:16AM  7   seriousness of the actual offense behavior and that accepting

09:16AM  8   this plea agreement would not undermine any statutory purposes

09:16AM  9   at sentencing.

09:16AM  10       There are a number of sentencing stipulations that the

09:16AM  11   parties have entered into, Your Honor.

09:16AM  12       First of all, pursuant to Guideline Section 2E1.3,

09:16AM  13   subparagraph A, subparagraph 2, and Section 2A2.2.  The parties

09:16AM  14   agree that the applicable base offense level should be 14.

09:16AM  15   Pursuant to Guideline Section 2A2.2, subparagraph B,

09:16AM  16   subparagraph 3, subparagraph capital B, the parties also agree

09:16AM  17   that this would be a five-level increase in offense level due

09:16AM  18   to the serious bodily injury caused to the individual we've

09:17AM  19   identified as Victim-H, as in Henry, in this plea agreement by

09:17AM  20   Mr. Buntenbah and his coconspirators.

09:17AM  21       As of the date of this agreement, it is expected that

09:17AM  22   the defendant will enter a plea of guilty prior to the

09:17AM  23   commencement of trial, will truthfully admit his involvement in

09:17AM  24   the offense and related conduct, and will not engage in conduct

09:17AM  25   that is inconsistent with such acceptance of responsibility.

09:17AM   1     If all these events occur, and the defendant's acceptance of

09:17AM   2     responsibility continues through the date of sentencing, a

09:17AM   3     downward adjustment of two levels for acceptance of

09:17AM   4     responsibility, pursuant to Guideline Section 3E1.1,

09:17AM   5     subparagraph A, and Application Note 3, would be appropriate.

09:17AM   6           The United States attorney agrees that Mr. Buntenbah's

09:17AM   7     agreement to enter into a guilty plea constitutes notice of

09:17AM   8     intent to plead guilty in a timely manner, so as to permit the

09:17AM   9     government to avoid preparing for trial as to him.

09:17AM   10          Accordingly, the U.S. Attorney anticipates moving in

09:17AM   11    the government's sentencing statement for a one-level reduction

09:18AM   12    in sentencing offense level, pursuant to Guideline Section

09:18AM   13    3E1.1, subparagraph B, as long as the defendant is otherwise

09:18AM   14    eligible.

09:18AM   15          The defendant understands, however, that

09:18AM   16    notwithstanding its present intentions, and still within the

09:18AM   17    parameters of this plea agreement, the prosecution reserves the

09:18AM   18    right to argue to the contrary, in the event that new

09:18AM   19    information is received relating to that issue, and/or to call

09:18AM   20    and examine witnesses on those issues, if either the U.S.

09:18AM   21    Probation Office finds to the contrary of the prosecution's

09:18AM   22    intentions or that the Court requests evidence.

09:18AM   23          The parties also agree that notwithstanding are

09:18AM   24    parties contained within this agreement, the Court is not bound

09:18AM   25    by any stipulation entered into by the parties.  And the Court

09:18AM   1    will be the final determiner of any facts relevant to

09:18AM   2    sentencing with the aid of the presentence report.

09:18AM   3         The parties also understand and agree that the Court's

09:18AM   4    rejection of any stipulation between the parties does not

09:18AM   5    constitute a refusal to accept this agreement, since the Court

09:19AM   6    is expressly not bound by the parties' stipulations.  The

09:19AM   7    parties represent that as of the date of this agreement, there

09:19AM   8    are no material facts in dispute.

09:19AM   9         In regards to appeal and collateral review, Your

09:19AM   10   Honor, Mr. Buntenbah is aware that typically he would have the

09:19AM   11   right to appeal his conviction and the sentence imposed.

09:19AM   12   However, pursuant to this plea agreement, he is knowingly and

09:19AM   13   voluntarily waiving his right to appeal except in two limited

09:19AM   14   circumstances:

09:19AM   15        First, if the Court were to sentence Mr. Buntenbah to

09:19AM   16   a level that is in excess of the applicable guideline range

09:19AM   17   that the Court finds to apply to his case, Mr. Buntenbah would

09:19AM   18   retain the right to appeal and/or collaterally attack that

09:19AM   19   portion of the sentence, that being in excess of the applicable

09:19AM   20   guideline range.  Similarly, Mr. Buntenbah is retaining his

09:19AM   21   right to appeal or collaterally attack any claim he may believe

09:20AM   22   exists in regard to ineffective assistance of counsel.  The

09:20AM   23   prosecution will retain its right to appeal the sentence in any

09:20AM   24   manner.

09:20AM   25        There are a number of financial disclosures that are

09:20AM    1    required pursuant to the plea agreement including the right --
09:20AM    2    I'm sorry, the responsibility for Mr. Buntenbah to fully
09:20AM    3    disclose all of his assets in which he has any interest over or
09:20AM    4    exercises control, directly or indirectly, including assets
09:20AM    5    held by a spouse, nominee, or third party.  Mr. Buntenbah has
09:20AM    6    agreed to provide other financial information, including a
09:20AM    7    credit check to U.S. Probation, for use in the presentence
09:20AM    8    report as well.
09:20AM    9         Also, prior to sentencing, the defendant has agreed to
09:20AM   10    notify the financial litigation program of the U.S. Attorney's
09:20AM   11    Office, before making any transfer of any interest in property
09:20AM   12    with a value exceeding $1,000, either owned directly,
09:21AM   13    indirectly, individually, or jointly by the defendant including
09:21AM   14    any interest held or owned under any name including trust,
09:21AM   15    partnerships and corporations.
09:21AM   16         In regard to imposing sentence, the defendant
09:21AM   17    understands that the District Court in imposing sentence will
09:21AM   18    consider the provisions of the sentencing guidelines, but there
09:21AM   19    is no promise or guarantee as to the applicability or
09:21AM   20    non-applicability of those guidelines, notwithstanding any
09:21AM   21    representations or predictions from any source.
09:21AM   22         The defendant also understands that the plea agreement
09:21AM   23    will not be accepted or rejected by the Court until it has had
09:21AM   24    an opportunity to consider the presentence report.
09:21AM   25         The defendant also understands that this Court will

09:21AM  1   not accept an agreement unless the Court determines that the
09:21AM  2   remaining charge adequately reflects the serious of the actual
09:21AM  3   offense behavior and that accepting the agreement would not
09:21AM  4   undermine any statutory purposes of sentencing.
09:21AM  5          The defendant is waiving a number of important trial
09:21AM  6   rights in this case, including the right to have a jury of his
09:22AM  7   peers determine the elements of the crime charged against him
09:22AM  8   beyond a reasonable doubt.  The defendant is also agreeing that
09:22AM  9   he would waive his privilege against self-incrimination so that
09:22AM  10  he could decline to testify, and no inference of guilt could be
09:22AM  11  drawn from his refusal to testify.
09:22AM  12         By pleading guilty, the defendant understands he is
09:22AM  13  waiving all of these trial rights.
09:22AM  14         In regard to use of police statements.  If after
09:22AM  15  signing this plea agreement the defendant decides not to plead
09:22AM  16  guilty, as provided herein, or if he pleads guilty but
09:22AM  17  subsequently makes a motion before the Court to withdraw his
09:22AM  18  guilty plea, and the Court would grant that motion, the
09:22AM  19  defendant agrees that any admission of guilt he makes by
09:22AM  20  signing this agreement or that he makes while pleading guilty,
09:22AM  21  as set forth in this plea agreement, may be used against him in
09:22AM  22  a subsequent trial, if the defendant would later proceed to
09:22AM  23  trial.
09:22AM  24         The defendant voluntarily, knowingly and intelligently
09:22AM  25  waives any protections afforded by Rule 11F of the Federal

09:23AM  1   Rules of Criminal Procedure and Rule 410 of the Federal Rules
09:23AM  2   of Evidence regarding use of statements made in this agreement
09:23AM  3   or during the course of pleading guilty when and if the guilty
09:23AM  4   plea is later withdrawn.  The only exception to this paragraph
09:23AM  5   is where the defendant fully complies with the plea agreement
09:23AM  6   but the Court nonetheless rejects it.  Under those
09:23AM  7   circumstances, the United States may not use those statements
09:23AM  8   of the defendant for any purpose.
09:23AM  9           The defendant also understands that the prosecution
09:23AM  10  will apprise the Court and the U.S. Probation Office of the
09:23AM  11  nature, scope, and extent of his conduct regarding the charges
09:23AM  12  against him, any related matters, as well as any matters in
09:23AM  13  aggravation or mitigation which are relevant to sentencing.
09:23AM  14          There is a cooperation provision as part of this plea
09:23AM  15  agreement, Your Honor.  The defendant has agreed that he will
09:23AM  16  fully cooperate with the United States, including to testify
09:23AM  17  truthfully at any and all trials, hearings, or other
09:23AM  18  proceedings at which he is requested to testify by the
09:24AM  19  prosecution; to make himself available to speak with law
09:24AM  20  enforcement officials and representatives of the
09:24AM  21  U.S. Attorney's Office at any time, and to give truthful and
09:24AM  22  complete answers at such meetings; and not to assert any
09:24AM  23  privilege to refuse to testify at any grand jury, trial, or
09:24AM  24  other proceedings involving or related to the crimes charged in
09:24AM  25  this second superseding indictment or subsequent charges

09:24AM    1    related to this investigation at which the prosecution requests

09:24AM    2    him to testify.

09:24AM    3         Pursuant to Section 1B1.8, subparagraph A, of the

09:24AM    4    guidelines, the prosecution agrees that self-incriminating

09:24AM    5    information provided pursuant to this agreement to cooperate

09:24AM    6    will not be used in determining the applicable guideline range,

09:24AM    7    except as may be provided in this agreement and under Section

09:24AM    8    1B1.8, subparagraph B, of the guidelines.

09:24AM    9         The defendant understands that, pursuant to Guideline

09:25AM   10    Section 5K1.1 and Rule 35(b) of the Federal Rules of Criminal

09:25AM   11    Procedure, the prosecution may move the Court to depart from

09:25AM   12    the guidelines on the grounds that the defendant has provided

09:25AM   13    substantial assistance to authorities in the investigation or

09:25AM   14    prosecution of another person who has committed an offense.

09:25AM   15    The defendant understands, however, that the decision as to

09:25AM   16    whether that request is made lies entirely within the

09:25AM   17    discretion of the prosecution, and this plea agreement does not

09:25AM   18    require the prosecution to make such a request or motion.

09:25AM   19         The plea agreement further confers no right upon the

09:25AM   20    defendant or any remedy in the event that the prosecution fails

09:25AM   21    to make such a request or motion.

09:25AM   22         The defendant also understands that even in the event

09:25AM   23    that the prosecution makes such a request or motion, the Court

09:25AM   24    may refuse to depart from the guidelines or to impose a

09:26AM   25    sentence below the minimum level established by statute.

09:26AM   1          The defendant and his attorney acknowledge that, apart

09:26AM   2   from any written proffer agreements, no threats, promises,

09:26AM   3   agreements, or conditions have been entered into by the parties

09:26AM   4   other than those set forth in this agreement in order to induce

09:26AM   5   the defendant to plead guilty.  Apart from any written proffer

09:26AM   6   agreements, this agreement supersedes all prior promises,

09:26AM   7   agreements or conditions between the parties.

09:26AM   8          To become effective, this agreement must be signed by

09:26AM   9   all parties.  Both signatures, Your Honor, are reflected on

09:26AM  10   page 22 of the plea agreement.

09:26AM  11          Finally, should the Court refuse to accept this plea

09:26AM  12   agreement, the parties agree that it will become null and void

09:26AM  13   and neither party would be bound thereto.

09:26AM  14          Those are the terms, Your Honor.

09:26AM  15          THE COURT:  Mr. Springstead, do you agree that AUSA

09:26AM  16   Inciong has accurately and thoroughly described the essential

09:26AM  17   terms of your client's plea agreement with the United States?

09:26AM  18          MR. SPRINGSTEAD:  Yes, Your Honor.

09:26AM  19          THE COURT:  Mr. Buntenbah, there are a number of

09:26AM  20   waivers -- appellate waivers, for example, that are contained

09:27AM  21   within this agreement, and I know you've read each of the

09:27AM  22   terms.  Your particular agreement contains that appellate

09:27AM  23   waiver at paragraph 13.  Mr. Inciong has accurately described

09:27AM  24   it, I don't feel the need to go over what would be a third

09:27AM  25   time; but there are some important, however, trial and trial

09:27AM  1   related rights that I want to review with you.  Again, I know
09:27AM  2   that you've gone through them because they are also part of
09:27AM  3   your plea agreement.  In your particular agreement, those
09:27AM  4   paragraphs that I'm speaking of, with respect to those trial
09:27AM  5   rights, are contained at paragraphs 17 and 18.
09:27AM  6           The first of those rights is, Mr. Buntenbah, do you
09:27AM  7   first of all understand that under the constitution and laws of
09:27AM  8   the United States you have the right not to plead guilty and to
09:27AM  9   proceed to a trial, including a trial by jury, on the charges
09:27AM  10  brought against you?
09:27AM  11          THE DEFENDANT:  Yes.
09:27AM  12          THE COURT:  Do you further understand, sir, that if
09:27AM  13  you were to proceed to trial, you would be presumed innocent,
09:27AM  14  which means that the government would have the burden of
09:27AM  15  proving your guilt to a jury beyond a reasonable doubt, and
09:28AM  16  that at no time would you have the burden of proving you are
09:28AM  17  not guilty?
09:28AM  18          THE DEFENDANT:  Yes, Your Honor.
09:28AM  19          THE COURT:  Do you understand that in order to be
09:28AM  20  found guilty at any trial, a jury of 12 persons from this local
09:28AM  21  community would have to find your guilt not only beyond a
09:28AM  22  reasonable doubt but they would also have to do so unanimously?
09:28AM  23          THE DEFENDANT:  Yes, Your Honor.
09:28AM  24          THE COURT:  Do you understand that at all stages of
09:28AM  25  the prosecution, which includes trial, you have the right to

| | | |
|---|---|---|
| 09:28AM | 1 | the assistance of counsel, as you do here this morning; and if |
| 09:28AM | 2 | at any point in time you could not afford counsel, one would be |
| 09:28AM | 3 | appointed for you by the Court at no cost to you? |
| 09:28AM | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 09:28AM | 5 | THE COURT:  Do you understand that at any trial you |
| 09:28AM | 6 | would have the right to see and to hear all of the government's |
| 09:28AM | 7 | evidence and witnesses and to have those witnesses questioned |
| 09:28AM | 8 | by your own attorney? |
| 09:28AM | 9 | THE DEFENDANT:  Yes, Your Honor. |
| 09:28AM | 10 | THE COURT:  Do you understand further that at any |
| 09:28AM | 11 | trial you could object to any of the evidence offered by the |
| 09:28AM | 12 | United States, and you could present evidence of your own in |
| 09:28AM | 13 | your case in chief, including through witness testimony that is |
| 09:28AM | 14 | compelled through the Court's subpoena power, if that were |
| 09:29AM | 15 | necessary? |
| 09:29AM | 16 | THE DEFENDANT:  Yes, Your Honor. |
| 09:29AM | 17 | THE COURT:  Do you understand that at any trial you |
| 09:29AM | 18 | would also have the right to testify on your own behalf, if you |
| 09:29AM | 19 | chose to do that, but if you chose not to, no inference or |
| 09:29AM | 20 | suggestion of your guilt could be drawn by the jury by the fact |
| 09:29AM | 21 | that you chose not to testify? |
| 09:29AM | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 09:29AM | 23 | THE COURT:  Do you understand, sir, that by entering a |
| 09:29AM | 24 | plea of guilty here this morning to Count 10, and if I were to |
| 09:29AM | 25 | accept that plea, there will be no trial and you will have |

09:29AM  1    given up each of these trial related rights that I've just

09:29AM  2    mentioned?

09:29AM  3                THE DEFENDANT:  Yes, Your Honor.

09:29AM  4                THE COURT:  Do you also understand that if you proceed

09:29AM  5    with your plea this morning, you will also need to give up or

09:29AM  6    waive your right not to incriminate yourself?  And the reason

09:29AM  7    for that is, I'm about to ask you few questions about what you

09:29AM  8    did that makes you guilty of Count 10, and those questions will

09:29AM  9    need to be answered.

09:29AM  10               THE DEFENDANT:  Yes, Your Honor.

09:29AM  11               THE COURT:  Do you have questions, sir, regarding any

09:29AM  12   of these rights that I just mentioned?

09:29AM  13               THE DEFENDANT:  No, Your Honor.

09:29AM  14               THE COURT:  And knowing these rights, do you still

09:29AM  15   wish to proceed with your plea?

09:29AM  16               THE DEFENDANT:  Yes, Your Honor.

09:29AM  17               THE COURT:  You are a United States citizen, correct?

09:29AM  18               THE DEFENDANT:  Yes, correct.

09:29AM  19               THE COURT:  As a United States citizen, you should

09:29AM  20   understand that the charges brought against you and that you

09:30AM  21   are prepared to plead guilty to are considered felony offenses.

09:30AM  22   If your plea is accepted and you are adjudged guilty of Count

09:30AM  23   10 in particular, that adjudication could deprive you of some

09:30AM  24   valuable civil rights.  Those civil rights include the right to

09:30AM  25   vote, the right to hold public office, the right to sit on a

| | | |
|---|---|---|
| 09:30AM | 1 | jury, as well as the right to possess or bear a firearm. |
| 09:30AM | 2 | THE DEFENDANT:  Yes, Your Honor. |
| 09:30AM | 3 | THE COURT:  With regard to sentencing, United States |
| 09:30AM | 4 | law establishes detailed sentencing guidelines; those |
| 09:30AM | 5 | guidelines apply to those who are convicted of, which includes |
| 09:30AM | 6 | those who plead guilty to federal crimes.  The sentencing |
| 09:30AM | 7 | judge, in this case is most likely myself, must consider those |
| 09:30AM | 8 | sentencing guidelines.  Additionally, the sentencing judge must |
| 09:30AM | 9 | consider the statutory sentencing factors that are set forth at |
| 09:30AM | 10 | Title 18 of the United States Code, Section 3553(a).  Although |
| 09:30AM | 11 | the sentencing judge must consider the guidelines, they are |
| 09:30AM | 12 | what the name might imply to you.  They are guidelines which |
| 09:30AM | 13 | means that they are advisory on this Court only.  Do you |
| 09:31AM | 14 | understand that. |
| 09:31AM | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 09:31AM | 16 | THE COURT:  Have you discussed how the sentencing |
| 09:31AM | 17 | guidelines might apply to your case with your counsel, |
| 09:31AM | 18 | Mr. Springstead? |
| 09:31AM | 19 | THE DEFENDANT:  Yes, I have. |
| 09:31AM | 20 | THE COURT:  And he likely was as careful, as I try to |
| 09:31AM | 21 | be, in using the term "might." |
| 09:31AM | 22 | THE DEFENDANT:  Right. |
| 09:31AM | 23 | THE COURT:  And that is because, as I sit here today, |
| 09:31AM | 24 | I cannot tell you with precision how the sentencing guidelines |
| 09:31AM | 25 | apply to your case; that's why we engage in the presentence |

09:31AM   1   investigation and preparation of an investigation report

09:31AM   2   process.  Again, as I mentioned a few minutes ago, that process

09:31AM   3   I expect to take three to four months.

09:31AM   4         At the conclusion of that process, once I receive the

09:31AM   5   report, counsel receives the report, and counsel have the

09:31AM   6   opportunity to provide me with any comments on or objections to

09:31AM   7   the contents of that report, that's counsel for both sides, I

09:31AM   8   will then be much more educated about how to apply the

09:31AM   9   guidelines and how to apply the statutory sentencing factors.

09:31AM  10   So that's kind of what we are looking towards in terms of the

09:32AM  11   next several months.

09:32AM  12         Once all of that information is in, I will be able to

09:32AM  13   tell you with precision how the guidelines apply, I will be

09:32AM  14   able with precision to tell you how I see the statutory

09:32AM  15   sentencing factors apply.  When I do all of those things, it is

09:32AM  16   possible that I could impose a sentence that is either more or

09:32AM  17   less severe than what the guidelines call for.  Do you

09:32AM  18   understand that?

09:32AM  19         THE DEFENDANT:  Yes, Your Honor.

09:32AM  20         THE COURT:  Now, as I said, one of the possibilities

09:32AM  21   is that I impose a sentence that is more severe than what the

09:32AM  22   guidelines call for, is more severe than what you expect; if I

09:32AM  23   do those things, you understand, sir, that you will still be

09:32AM  24   bound by your plea as well as your plea agreement and will have

09:32AM  25   no right to withdraw from either on that basis?

09:32AM   1          THE DEFENDANT:  Yes, Your Honor.

09:32AM   2          THE COURT:  Now, do you understand, sir, that despite

09:32AM   3   any discussions you may have had with Mr. Inciong, with

09:33AM   4   Mr. Springstead, or with anyone else regarding the type or the

09:33AM   5   duration of the sentence you are likely to receive, or

09:33AM   6   regarding any sentencing recommendation that they may wish to

09:33AM   7   provide to me, I am not bound by those discussions, nor am I

09:33AM   8   bound by any recommendations provided to me, and I could impose

09:33AM   9   a sentence that is more severe than what you expect up to the

09:33AM   10  maximum permitted by law?

09:33AM   11         THE DEFENDANT:  Yes, Your Honor.

09:33AM   12         THE COURT:  Has anyone made any promises to you, sir,

09:33AM   13  regarding what your sentence will be?

09:33AM   14         THE DEFENDANT:  No, Your Honor.

09:33AM   15         THE COURT:  Do you understand that at the time of

09:33AM   16  sentencing, there is no limitation on the information I can

09:33AM   17  consider regarding your background, your character, and your

09:33AM   18  conduct, except that the information I use must be sufficiently

09:33AM   19  reliable?

09:33AM   20         THE DEFENDANT:  Yes, Your Honor.

09:33AM   21         THE COURT:  Do you understand that if a term of

09:33AM   22  imprisonment is imposed as part of your sentence, a term of

09:33AM   23  what we call supervised release is very likely to follow, and

09:33AM   24  if you were to violate any of the conditions of supervised

09:33AM   25  release, additional prison time could be imposed?

09:33AM   1          THE DEFENDANT:  Yes, Your Honor.

09:33AM   2          THE COURT:  Do you also understand that in the federal

09:34AM   3   system, parole has been abolished.  And what that means, from a

09:34AM   4   practical standpoint, is if a term of imprisonment is imposed

09:34AM   5   as part of your sentence, you will not be released early on

09:34AM   6   parole?

09:34AM   7          THE DEFENDANT:  Yes, Your Honor.

09:34AM   8          THE COURT:  Do you also understand, sir, that as part

09:34AM   9   of any final judgment and sentence in this case, the Court

09:34AM  10   could order you to pay a fine as well as a special assessment?

09:34AM  11          THE DEFENDANT:  Yes, Your Honor.

09:34AM  12          THE COURT:  And the Court could as well award

09:34AM  13   restitution?

09:34AM  14          THE DEFENDANT:  Yes, Your Honor.

09:34AM  15          THE COURT:  Now, we have reached the point in this

09:34AM  16   morning's proceedings that I alluded to a few minutes ago, when

09:34AM  17   we talked about the right not to incriminate yourself.  I need

09:34AM  18   to be sure that you in fact committed the crime that you have

09:34AM  19   been charged with in Count 10 of the second superseding

09:34AM  20   indictment.  And the first step in that process, Mr. Buntenbah,

09:34AM  21   is to turn to the government's attorney, Mr. Inciong, to set

09:34AM  22   forth the elements of that particular count.

09:34AM  23          THE DEFENDANT:  Yes, Your Honor.

09:34AM  24          MR. INCIONG:  Your Honor, there are five elements that

09:34AM  25   the United States would have to prove beyond a reasonable doubt

09:34AM  1   for the count that is charged and to which Mr. Buntenbah is

09:35AM  2   pleading guilty today, which is conspiracy to commit assault in

09:35AM  3   aid of racketeering.

09:35AM  4        First, that from the time period charged in the second

09:35AM  5   superseding indictment, there was an enterprise affecting

09:35AM  6   interstate commerce which in fact existed.

09:35AM  7        Secondly, that the enterprise engaged in racketeering

09:35AM  8   activity.

09:35AM  9        Third, that the defendant conspired to commit the

09:35AM  10  following crime of violence, that being assault resulting in

09:35AM  11  serious bodily injury as defined in Ninth Circuit Model Jury

09:35AM  12  Instruction 8.9.

09:35AM  13       Fourth, that the defendant's purpose in conspiring to

09:35AM  14  commit assault resulting in serious bodily injury was to gain

09:35AM  15  entrance to or to maintain or to increase his position in the

09:35AM  16  enterprise.

09:35AM  17       And, fifth, that the defendant did something that was

09:35AM  18  a substantial step towards committing the crime and that

09:35AM  19  strongly corroborated the defendant's intent to commit the

09:35AM  20  crime.

09:35AM  21       In regard to the object of the conspiracy, the crime

09:36AM  22  here itself, there are two sub-elements that would also be

09:36AM  23  essential for the government to prove beyond a reasonable doubt

09:36AM  24  in regard to the assault resulting in serious bodily injury.

09:36AM  25  Those are:  First, the defendant assaulted an individual, that

09:36AM   1   specific individual has been identified as Victim-H, as in

09:36AM   2   Henry, in the plea agreement, by intentionally striking or

09:36AM   3   wounding that victim.

09:36AM   4        Second, as a result, the victim, Victim-H here again,

09:36AM   5   suffered serious bodily injury.

09:36AM   6        Those are the elements at issue, Your Honor.

09:36AM   7        THE COURT:  Mr. Springstead, any disagreement with

09:36AM   8   AUSA Inciong's description of the elements of Count 10?

09:36AM   9        MR. SPRINGSTEAD:  No, Your Honor.

09:36AM   10        THE COURT:  Then I'll turn back to the government's

09:36AM   11   attorney to set forth the evidence that the government would

09:36AM   12   offer in this case if it were to proceed to trial.

09:36AM   13        MR. INCIONG:  Yes, Your Honor.  If this matter

09:36AM   14   proceeded to trial, the United States would produce evidence to

09:36AM   15   show the following:

09:36AM   16        From at least in or about December of 2012 and

09:37AM   17   continuing up to and including January of 2016, Michael

09:37AM   18   Buntenbah, aka "Mike B," the defendant, agreed with Michael J.

09:37AM   19   Miske, Jr., also known as "Bro," John B. Stancil, and others

09:37AM   20   known and unknown, to commit assault resulting in serious

09:37AM   21   bodily injury in the District of Hawaii.

09:37AM   22        During that same time period, Mr. Buntenbah, Miske,

09:37AM   23   Stancil, and others, known and unknown, were associates of the

09:37AM   24   Miske Enterprise.  The evidence would show that members and

09:37AM   25   associates of the Miske Enterprise operated principally under

| | | |
|---|---|---|
| 09:37AM | 1 | the direction and protection of Michael J. Miske, Jr., who used |
| 09:37AM | 2 | his power over members and associates of the Miske Enterprise, |
| 09:37AM | 3 | his reputation for violence in the community, and the various |
| 09:37AM | 4 | corporate entities under his control to enrich the members and |
| 09:37AM | 5 | associates of the Miske Enterprise and to protect their |
| 09:37AM | 6 | criminal activities. |
| 09:37AM | 7 | The evidence would show that the Miske Enterprise, |
| 09:38AM | 8 | including its leadership, membership, and associates, |
| 09:38AM | 9 | constituted an enterprise, as that term is defined in Title 18, |
| 09:38AM | 10 | U.S. Code, Section 1961, subparagraph 4, that is, a group of |
| 09:38AM | 11 | individuals and entities associated in fact.  The evidence |
| 09:38AM | 12 | would show that the Miske Enterprise was engaged in and its |
| 09:38AM | 13 | activities affected interstate commerce. |
| 09:38AM | 14 | This was done through a number of ways, Your Honor, in |
| 09:38AM | 15 | acts that involved murder, kidnapping, arson, and robbery. |
| 09:38AM | 16 | Also offenses relating to chemical weapons, wire fraud, Hobbs |
| 09:38AM | 17 | Act robberies, and other crimes such as the use of weapons as |
| 09:38AM | 18 | charged in the second superseding indictment that were |
| 09:38AM | 19 | manufactured out of the state and transported to the District |
| 09:38AM | 20 | of Hawaii thus affecting interstate commerce. |
| 09:38AM | 21 | The evidence would show that the Miske Enterprise |
| 09:39AM | 22 | operated within the District of Hawaii and elsewhere and |
| 09:39AM | 23 | constituted an ongoing organization whose members and |
| 09:39AM | 24 | associates functioned as a continuing unit for a common purpose |
| 09:39AM | 25 | of achieving the objectives of the Miske Enterprise. |

09:39AM   1          Mr. Buntenbah's agreement with Miske, Stancil, and
09:39AM   2   others to commit assault resulting in serious bodily injury was
09:39AM   3   for the purpose of maintaining and increasing position with the
09:39AM   4   Miske Enterprise.
09:39AM   5          The parties agree that the government's proof at trial
09:39AM   6   would show that the following overt acts were committed in
09:39AM   7   furtherance of the conspiracy to commit assault resulting in
09:39AM   8   serious bodily injury.
09:39AM   9          While the defendant does not specifically recall each
09:39AM   10  of the incidents I will describe, the defendant does not
09:39AM   11  dispute that at a trial the government would produce evidence
09:39AM   12  to prove each of these events.
09:39AM   13         Beginning on December 15, 2012, the evidence would
09:39AM   14  show in the early morning hours of that date, Victim-A set up a
09:40AM   15  promotional table outside of what's known as Restaurant Row in
09:40AM   16  the parking garage specifically there on Pohukaina Street in
09:40AM   17  Honolulu.
09:40AM   18         The M nightclub, which was an establishment owned
09:40AM   19  and/or controlled by Michael J. Miske, Jr. at the time was
09:40AM   20  located in Restaurant Row at 500 Ala Moana Boulevard.  At about
09:40AM   21  4:00 in the morning a black Porsche SUV driven by Mr. Miske
09:40AM   22  pulled up to the promotional table.
09:40AM   23         After seeing Victim-A was passing out flyers promoting
09:40AM   24  a New Year's Eve party, Mr. Miske got in touch with
09:40AM   25  Mr. Buntenbah and directed him to send others to meet Mr. Miske

09:40AM 1  outside at his location.  At that time, Mr. Buntenbah was

09:40AM 2  employed by Miske as a trusted bouncer at the M nightclub.

09:40AM 3  Mr. Buntenbah asked other bouncers at the M, who wanted to

09:40AM 4  handle it, and several of the bouncers left the club to assist

09:40AM 5  Mr. Miske.

09:40AM 6        After placing the call to Mr. Buntenbah, Miske

09:41AM 7  approached Victim-A and began screaming at him that he was,

09:41AM 8  quote, disrespecting Miske by handing out the flyers and

09:41AM 9  demanded that Victim-A leave the area.  As he was being

09:41AM 10 confronted by Miske, Victim-A turned to see four or five M club

09:41AM 11 bouncers approaching him from behind.  One of that group was

09:41AM 12 John B. Stancil who swung at Victim-A but missed.  Other

09:41AM 13 bouncers then held Victim-A while Miske punched Victim-A in the

09:41AM 14 face.  Victim-A fell to the ground and Miske and his bouncers

09:41AM 15 continued to hit and kick Victim-A in the head and torso with

09:41AM 16 Miske instructing them to, quote, kick his ass, referring to

09:41AM 17 Victim-A.

09:41AM 18       Victim-B, a female acquaintance of Victim-A, ran to

09:41AM 19 Victim-A at that point and attempted to shield him while

09:41AM 20 begging Miske to stop the attack.  Miske and the bouncers then

09:41AM 21 began to punch and kick Victim-B, who identified Miske as the

09:41AM 22 person who initially confronted and assaulted Victim-A.

09:42AM 23 Victim-B also identified Stancil as one of the attackers, and

09:42AM 24 Mr. Buntenbah was one of the bouncers who came to assist Miske.

09:42AM 25       After the group beat Victim-A for several minutes,

09:42AM   1   Miske threw Victim-A's laptop computer and other equipment down
09:42AM   2   on the pavement destroying it.  A bystander took a video of the
09:42AM   3   assault on his phone, but one of the bouncers took the phone
09:42AM   4   and deleted that video.

09:42AM   5        After Miske and the bouncers left, an ambulance
09:42AM   6   responded and took Victim-A to the hospital where he was
09:42AM   7   treated for multiple broken ribs as well as swelling and
09:42AM   8   contusions on his face and body.  Victim-B drove herself to the
09:42AM   9   hospital and suffered lesser injuries.  Later, Victim-A was
09:42AM   10  approached by a third party who relayed that Mr. Miske wanted
09:42AM   11  to give him $10,000 to resolve the incident.

09:42AM   12       Turning to January 12th of 2013, the defendant would
09:42AM   13  show that in the early morning hours on that date at the M
09:42AM   14  nightclub, located at 500 Ala Moana Boulevard in Honolulu,
09:43AM   15  again an establishment owned and/or controlled by Mr. Miske at
09:43AM   16  the time, the defendant Mr. Buntenbah assaulted Victim-C.  The
09:43AM   17  incident occurred after Victim-C had accidently bumped into
09:43AM   18  Miske inside the club and Miske asked for Victim-C to leave.  A
09:43AM   19  group of security guards then escorted Victim-C out of the
09:43AM   20  club.

09:43AM   21       As Victim-C walked backwards, Mr. Buntenbah approached
09:43AM   22  him and punched Victim-C in the jaw with a closed fist causing
09:43AM   23  Victim-C to fall backward and hit his head on the ground.
09:43AM   24  After the assault, Victim-C called police from his home to
09:43AM   25  report the incident and identified Mr. Buntenbah as his

09:43AM   1   assailant.

09:43AM   2          Responding officers observed cuts inside Victim-C's

09:43AM   3   mouth, redness to his cheek, and a bump on the back of his

09:43AM   4   head.  Victim-C told police he did not wish to prosecute

09:43AM   5   because he feared retaliation.

09:43AM   6          The evidence would show that in the early morning

09:43AM   7   hours of a second date in January of 2013, that being

09:44AM   8   January 24th, again at the M nightclub at 500 Ala Moana

09:44AM   9   Boulevard, again an establishment owned and/or controlled by

09:44AM  10   Mr. Miske at that time, Mr. Buntenbah assaulted Victims D and

09:44AM  11   E.  Victims D and E were at the club with Victim-E's brother,

09:44AM  12   Victim-F.

09:44AM  13          Victim-F was asked to leave by Miske after Victim-F

09:44AM  14   objected to being sprayed with champagne inside the club.  As M

09:44AM  15   security escorted Victim-F out of the club, Mr. Miske hit him

09:44AM  16   over the head with a champagne bottle causing a laceration to

09:44AM  17   the left side of Victim-F's forehead.

09:44AM  18          The evidence would show that then John B. Stancil shot

09:44AM  19   Victim-F with either a stun gun or a taser causing Victim-E and

09:44AM  20   D to attempt to intervene on Victim-F's behalf.  As they did

09:44AM  21   so, Stancil used the stun gun or taser to shock Victim-E.

09:44AM  22   After Victim-E and Victim-D began to back away, Mr. Buntenbah

09:45AM  23   was identified punching Victim-E in the jaw, face, and forehead

09:45AM  24   serval times resulting in swelling to his face.

09:45AM  25          When Victim-D attempted to intervene on Victim-E's

09:45AM  1    behalf, he was attacked by several M bouncers, including

09:45AM  2    Mr. Buntenbah, who punched, kicked, and stomped on Victim-D

09:45AM  3    while he was on the ground.  Victim-D was examined at a

09:45AM  4    hospital and determined to have suffered minor injuries.

09:45AM  5           The evidence would show that on January 31st, 2016, in

09:45AM  6    the early morning hours, again at the M nightclub, again an

09:45AM  7    establishment owned and/or controlled by Mr. Miske at the time,

09:45AM  8    Mr. Buntenbah assaulted Victim-G and Victim-H.

09:45AM  9           While just outside the club, Mr. Buntenbah was

09:45AM  10   identified punching Victim-G in the face with a closed fist,

09:45AM  11   knocking Victim-G unconscious.  Victim-G fell backward and

09:45AM  12   struck the back of his head on the cement causing a laceration

09:45AM  13   that required staples to close.  Victim-G was treated at a

09:45AM  14   hospital where the examining physician determined Victim-G to

09:46AM  15   have suffered a concussion, a laceration to his scalp, and a

09:46AM  16   fractured clavicle.

09:46AM  17          The evidence would show that Mr. Buntenbah assaulted

09:46AM  18   Victim-H by repeatedly punching Victim-H in the face and

09:46AM  19   kicking him in the face after he fell to the ground.  As a

09:46AM  20   result, Victim-H's left eye was swollen shut when police

09:46AM  21   arrived.  Victim-H was treated at a hospital where the

09:46AM  22   examining physician determined Victim-H had suffered multiple

09:46AM  23   head injuries, including a left orbital floor fracture and

09:46AM  24   multiple additional facial bone fractures around the left eye.

09:46AM  25   The treating physician concluded that the injuries around

09:46AM  1    Victim-H's left eye were serious bodily injuries likely to
09:46AM  2    cause facial deformity and could also cause eye or vision
09:46AM  3    damage.
09:46AM  4         The evidence would show that the Miske Enterprise
09:46AM  5    benefitted from all of these assaults by enhancing its
09:46AM  6    reputation for violence in the community which thus aided in
09:46AM  7    protecting its criminal activities.
09:46AM  8         That would be the evidence produced at trial, Your
09:47AM  9    Honor.
09:47AM  10        THE COURT:  Mr. Buntenbah, do you understand the
09:47AM  11   evidence that the government would offer in this case if it
09:47AM  12   were to proceed to trial?
09:47AM  13        THE DEFENDANT:  Yes, Your Honor.
09:47AM  14        THE COURT:  Do you agree, sir, that what the
09:47AM  15   government said you did is true?
09:47AM  16        THE DEFENDANT:  Yes, Your Honor.
09:47AM  17        THE COURT:  In your own words, please describe what
09:47AM  18   you did that makes you guilty of Count 10.
09:47AM  19        THE DEFENDANT:  Your Honor, during that time period I
09:47AM  20   worked as a bouncer at the M nightclub, which was run by
09:47AM  21   Michael Miske.  During that time there was a lot of physical
09:47AM  22   altercations there.  I did punch Victim-H in the face outside
09:47AM  23   the nightclub after there was an earlier altercation.  And
09:47AM  24   these other assaults I do recall them; I just I can't remember
09:48AM  25   them completely to talk about it today.

09:48AM   1          THE COURT:  Victim-H, the one individual you

09:48AM   2   specifically recall, suffered some serious injuries, physical

09:48AM   3   injuries as a result of what you did to him?

09:48AM   4          THE DEFENDANT:  Yes, he was hurt prior, I'm not sure.

09:48AM   5   But when I did punch him, yes, I did hurt him.  Yes, Your

09:48AM   6   Honor.

09:48AM   7          THE COURT:  And among the injuries he suffered was

09:48AM   8   this left orbital fracture, in other words, near his left eye?

09:48AM   9          THE DEFENDANT:  You're correct, Your Honor.  He did

09:48AM   10  have that injury prior, just a cut on his face, but I did punch

09:48AM   11  him and I could have caused that to his eye; correct.

09:48AM   12         THE COURT:  And that incident occurred at the M

09:48AM   13  nightclub on January 31st, it looks like, 2016?

09:48AM   14         THE DEFENDANT:  Yes, Your Honor.

09:48AM   15         THE COURT:  And during this entire time frame that Mr.

09:48AM   16  Inciong described these various events, it seems like the M

09:48AM   17  nightclub was a major source of issues and altercations since

09:48AM   18  all of the events, in furtherance of Count 10, that Mr. Inciong

09:49AM   19  described, every single one of them occurred at the M

09:49AM   20  nightclub; is that fair?

09:49AM   21         THE DEFENDANT:  Yes, Your Honor.  During that time

09:49AM   22  period, there were -- I'm sure there were numerous fights at

09:49AM   23  the nightclub during that time.  That specific night for

09:49AM   24  Victim-H I was not working as security, but I was trying to

09:49AM   25  help out as a liaison for security.  So I was trying to go out

09:49AM   1    front and that's when I assaulted Victim-H, yes.

09:49AM   2         THE COURT:  And during this entire time frame, roughly

09:49AM   3    2012 to 2016, the M nightclub was owned and operated by a

09:49AM   4    codefendant of yours, Mr. Michael Miske, Jr.; is that true?

09:49AM   5         THE DEFENDANT:  To my recollection, I know he was part

09:49AM   6    owner and also with another individual, I believe.

09:49AM   7         THE COURT:  And the activities that you engaged in as

09:49AM   8    a bouncer at the M nightclub were at the direction and control,

09:49AM   9    I assume, of your employer which included Mr. Miske?

09:49AM   10        THE DEFENDANT:  That's correct, Your Honor.

09:50AM   11        THE COURT:  And the business -- and the M nightclub

09:50AM   12   was just one of the businesses that Mr. Miske owned at the

09:50AM   13   time; is that your understanding as well?

09:50AM   14        THE DEFENDANT:  Yes, Your Honor.

09:50AM   15        THE COURT:  And all of these businesses operated in

09:50AM   16   the fashion that the government -- to your knowledge at

09:50AM   17   least -- in the fashion that the government has described, in

09:50AM   18   other words, as an enterprise as that term is understood within

09:50AM   19   Title 18 of the United States Code?

09:50AM   20        THE DEFENDANT:  Yes, Your Honor.

09:50AM   21        THE COURT:  And Mr. Miske, Jr. was the person who

09:50AM   22   controlled that enterprise?

09:50AM   23        THE DEFENDANT:  Correct, Your Honor.

09:50AM   24        THE COURT:  And the enterprise engaged in, among other

09:50AM   25   things, activities that affected interstate commerce; is that

| | | |
|---|---|---|
| 09:50AM | 1 | fair as well?  In other words, I'll just use one example, that |
| 09:50AM | 2 | at times firearms were employed, not necessarily by you, I'm |
| 09:50AM | 3 | not saying specifically by you but by members of the |
| 09:50AM | 4 | enterprise, guns being something that were manufactured outside |
| 09:50AM | 5 | of the State of Hawaii and imported for use into the state. |
| 09:50AM | 6 | THE DEFENDANT:  I can't truthfully say that I know |
| 09:51AM | 7 | anything about that, Your Honor; but from hearsay, correct.  I |
| 09:51AM | 8 | personally have no involvement with any firearms or anything |
| 09:51AM | 9 | like that. |
| 09:51AM | 10 | THE COURT:  I'm not accusing you of that.  I don't |
| 09:51AM | 11 | think the government is either.  But the enterprise itself |
| 09:51AM | 12 | there were other members of that enterprise, those other |
| 09:51AM | 13 | members -- |
| 09:51AM | 14 | THE DEFENDANT:  Yes, Your Honor. |
| 09:51AM | 15 | THE COURT:  -- those members included Mr. Miske and |
| 09:51AM | 16 | Mr. Stancil specifically? |
| 09:51AM | 17 | THE DEFENDANT:  Yes, they were members.  Yes. |
| 09:51AM | 18 | THE COURT:  Let me make sure I've got everything |
| 09:51AM | 19 | covered.  And by engaging in these activities at Mr. Miske's |
| 09:51AM | 20 | direction, or perhaps the direction of other members of the |
| 09:51AM | 21 | enterprise, those activities that you engaged in enhanced both |
| 09:51AM | 22 | the enterprise as well as your position within the enterprise; |
| 09:51AM | 23 | is that also fair? |
| 09:51AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 09:51AM | 25 | THE COURT:  Are both counsel satisfied that a factual |

09:51AM   1   basis for Mr. Buntenbah's plea of guilty to Count 10 has been

09:52AM   2   established?

09:52AM   3           MR. INCIONG:  The government is satisfied.  Thank you.

09:52AM   4           MR. SPRINGSTEAD:  Yes, Your Honor.

09:52AM   5           THE COURT:  Then I'll turn to you, Mr. Buntenbah.  As

09:52AM   6   to Count 10 of the second superseding indictment, how do you

09:52AM   7   plead:  guilty or not guilty?

09:52AM   8           THE DEFENDANT:  I'm guilty, Your Honor.

09:52AM   9           THE COURT:  The Court finds then that the defendant,

09:52AM   10  Mr. Buntenbah, understands the nature of this morning's

09:52AM   11  proceedings and is competent to enter a knowing and informed

09:52AM   12  plea.  The Court further finds that Mr. Buntenbah has in fact

09:52AM   13  entered a knowing, informed, and voluntary plea of guilty to

09:52AM   14  Count 10 of the second superseding indictment, and he has done

09:52AM   15  so without coercion, force or threat.

09:52AM   16          The Court finds that Mr. Buntenbah's plea of guilty to

09:52AM   17  Count 10 is supported by an independent basis in fact

09:52AM   18  containing each of the essential elements of Count 10, and that

09:52AM   19  the defendant understands both the trial as well as the civil

09:52AM   20  rights that he would have in the absence of pleading guilty but

09:52AM   21  he nonetheless knowingly and voluntary elects to waive those

09:52AM   22  rights.

09:52AM   23          Finally, the Court finds that the defendant, in

09:52AM   24  pleading guilty, understands the factors that the Court will

09:52AM   25  consider at the time of sentencing that include the potential

09:53AM   1   penalties applicable to a violation of Count 10 as earlier

09:53AM   2   described by the government's attorney.

09:53AM   3          Mr. Buntenbah, as you have acknowledged that you are

09:53AM   4   in fact guilty, I accept your guilty plea and adjudge you

09:53AM   5   guilty as charged to Count 10 of the second superseding

09:53AM   6   indictment.

09:53AM   7          The Court orders the plea agreement in this case to be

09:53AM   8   filed, but I reserve determination of whether to accept it

09:53AM   9   until after a presentence investigation and report have both

09:53AM   10  been completed.

09:53AM   11         May we get a sentencing date please?

09:53AM   12         THE CLERK:  Yes, Your Honor.  August 4, 2022 at

09:53AM   13  9:00 a.m.

09:53AM   14         THE COURT:  Is that date and time acceptable with both

09:53AM   15  counsel?

09:53AM   16         MR. INCIONG:  Yes, Your Honor.

09:53AM   17         MR. SPRINGSTEAD:  Yes, Your Honor.

09:53AM   18         THE COURT:  All right.  The defendant has been out on

09:53AM   19  pretrial release by this Court's order.  I have read the most

09:53AM   20  recent pretrial services report dated March 14th of 2022; it

09:53AM   21  does recommend that the defendant remain out on release subject

09:53AM   22  to the current set of conditions.

09:53AM   23         Any issue with that from the government's point of

09:53AM   24  view?

09:53AM   25         MR. INCIONG:  No objection, Your Honor.

| | | |
|---|---|---|
| 09:54AM | 1 | THE COURT:  All right.  Bail will remain as currently |
| 09:54AM | 2 | set.  I will remind the defendant, as I do all defendants in |
| 09:54AM | 3 | this circumstance, that all of the pretrial release conditions |
| 09:54AM | 4 | that you've been operating with remain in full force and effect |
| 09:54AM | 5 | until the date and time that we reconvene for sentencing, that |
| 09:54AM | 6 | currently being at least August 4th.  Any single violation of |
| 09:54AM | 7 | your pretrial release conditions, as is the case now, could |
| 09:54AM | 8 | have serious and negative consequences; those consequences |
| 09:54AM | 9 | include your immediate detention.  Do you understand that, sir? |
| 09:54AM | 10 | THE DEFENDANT:  Yes, Your Honor.  Sorry. |
| 09:54AM | 11 | THE COURT:  Is there a matter you want to address, |
| 09:54AM | 12 | Mr. Springstead? |
| 09:54AM | 13 | MR. SPRINGSTEAD:  Yes, Your Honor.  Mr. Buntenbah has |
| 09:54AM | 14 | been exemplary on pretrial release for this extended period of |
| 09:54AM | 15 | time and his probation officer has loosened restrictions on him |
| 09:54AM | 16 | and recommended loosening of restrictions.  One of those that's |
| 09:54AM | 17 | critical to Mr. Buntenbah that we would ask the Court to |
| 09:55AM | 18 | consider reducing is the amount of the property bond in this |
| 09:55AM | 19 | matter.  He has a $500,000 property bond, and that's inhibiting |
| 09:55AM | 20 | his ability to support and engage in his business.  In other |
| 09:55AM | 21 | words, he wants to tap into some of that equity that he has in |
| 09:55AM | 22 | his home for business purposes, and we are hoping that the |
| 09:55AM | 23 | Court would consider reducing the amount of that property bond. |
| 09:55AM | 24 | THE COURT:  All right.  I'm very familiar with the |
| 09:55AM | 25 | property bond because I'm the one who imposed it.  I know it |

09:55AM   1    hurts, it's meant to hurt, right?  That's the whole point.  A

09:55AM   2    property bond exists to ensure the defendant's appearance when

09:55AM   3    ordered to do so by this Court.  I'm not without being

09:55AM   4    reasonable insofar as reconsidering the amount of the bond, but

09:55AM   5    I'm going to need something more than what I have currently,

09:55AM   6    which is nothing more than what you just said in 30 seconds.

09:55AM   7          So if you work with -- unless you want to know what

09:56AM   8    the government thinks about that, I would not adjust the bond

09:56AM   9    without at least giving the government that opportunity.  I

09:56AM   10   never make these types of changes without input from pretrial

09:56AM   11   services in this case, probation in other circumstances, but

09:56AM   12   pretrial services here.  So I would need their input in terms

09:56AM   13   of how much of an adjustment is being sought and why those

09:56AM   14   things need to be documented.

09:56AM   15         So I'm willing to consider that, everything you asked

09:56AM   16   for, but I need support beyond just a verbal representation.

09:56AM   17   And I've been -- this is the first I've heard of an adjustment

09:56AM   18   being requested.  I have nothing in writing from anyone on that

09:56AM   19   subject.  So that's not something I feel like I can deal with

09:56AM   20   more than I already have in the few comments I've made.

09:56AM   21         So submit what you wish in writing with everyone's

09:56AM   22   input, or I will give everyone a chance at least to provide

09:57AM   23   that input, everyone being the government and pretrial

09:57AM   24   services, and I will if necessary convene a hearing and then

09:57AM   25   make a decision.

09:57AM    1            MR. SPRINGSTEAD:  Thank you, Your Honor.  I completely

09:57AM    2     understand, and we will provide that information to the Court.

09:57AM    3     I didn't think it was appropriate timing-wise to bring it

09:57AM    4     before a plea, and I think that we have it pretty well drafted

09:57AM    5     and we have discussed it with probation and the government; so

09:57AM    6     we will get that to you quickly, and I thank you for that.

09:57AM    7            THE COURT:  Absolutely.  Anything else that I can

09:57AM    8     assist either side with this morning?

09:57AM    9            MR. SPRINGSTEAD:  Thank you, Your Honor.

09:57AM   10            MR. INCIONG:  No, thank you, Your Honor.

09:57AM   11            THE COURT:  Then we will see everyone back here in

09:57AM   12     early August, at least on the current schedule, obviously

09:57AM   13     schedules sometimes get changed, but that's the current date,

09:57AM   14     and hopefully we can reconvene in person like we are today and

09:57AM   15     hopefully COVID allows us and cooperates in that regard.  We

09:57AM   16     will see you in early August.

09:57AM   17            (Proceedings were concluded at 9:57 a.m.)

          18

          19

          20

          21

          22

          23

          24

          25

```
 1                    COURT REPORTER'S CERTIFICATE

 2          I, Gloria T. Bediamol, Official Court Reporter, United

 3   States District Court, District of Hawaii, do hereby certify

 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5   true, and correct transcript from the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the regulations

 8   of the Judicial Conference of the United States.

 9

10          DATED at Honolulu, Hawaii, October 5, 2022.

11

12

13                              /s/ Gloria T. Bediamol

14                              GLORIA T. BEDIAMOL.

15                              RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25
```